**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

ORGANOGENESIS INC.,
          Appellant,

v.

JANE ANDREWS, KAREN A. GIAMPAOLO,
MARGARET HIRST, DINA KAZIS-PANICO,
HODA MANSOUR, JOHN G. O'BRIEN,
DANIEL O'REILLY, MARC P. PELLETIER,
JOHN C. RODRIGUES, JONATHAN E. THAYER,
TAMYRA A. TOOLE, and LEON M.WILKINS,
          Appellees.

Case No. 04-CV-12549-RWZ

/

## BRIEF OF APPELLEES
## THE WARN ACT CLAIMANTS

Kevin B. Callanan (BBO #070620)
Law Office of Kevin B. Callanan
17 Accord Park Drive – Suite 101
Norwell, Massachusetts 02061
Tel: 781-878-1604
Fax: 781-878-3154
E-Mail: kbcallanan@msn.com

Dated: January 5, 2005

## TABLE OF CONTENTS

Page

Table of Authorities……………………………………………………    3

Issues Presented For Review…………………………………………..    5

Statement of Facts………………………………………………………    6

Summary of Argument…………………………………………………...    7

Argument…………………………………………………………………..    8

I.    Organogenesis Is Precluded From Arguing, For The First Time
On Appeal, That The September 20, 2002 Notice To Employees
Substantially Complies With The WARN Act Because The Argument
Raises An Issue That Was Not Presented In The Bankruptcy
Court……………………………………………………………………… 8

II.    The Bankruptcy Court Was Correct In Ruling That Organogenesis
Could Not Assert The "Faltering Company" Defense Because It
Gave No Notice To Its Employees Pursuant To The WARN Act….. 10

III.    The Bankruptcy Court Was Correct In Finding That, In Any Event,
Organogenesis Could Not Satisfy The Requirements Of The
"Faltering Company" Defense…………………………………………  17

Conclusion……………………………………………………………………. 21

## TABLE OF AUTHORITES
### Cases

*Barnett et al. v. Jamesway Corp.(In re Jamesway Corp.),*
    235 B.R. 329 (Bankr. S.D.N.Y. 1999) ……………………………………………… 13

*In re Cadkey Corp.,* 317 B.R. 19, 22 (D. Mass. 2004)………………………….. 9

*Childress v. Darby Lumber, Inc.,* 126 F.Supp. 2d 1310, 1319 (D.Mont.2001)………..13

*Childress v. Darby Lumber, Inc.,* 357 F. 3d 1000, 1008 (9th Cir. 2004)……………….14

*Graphic Communications Int'l Union, Local 1B v. Bureau of Engraving, Inc.,*
    2003 WL 21639146, *5 (D. Minn. 2003)……………………………………………… 15

*Grimmer v. Lord Day & Lord,* 937 F. Supp. 255, 257 (S.D.N.Y. 1996)…………… 15 & 17

*Jones v. Kayser-Roth Hosiery, Inc.,* 748 F. Supp. 1276 (E.D. Tenn. 1990)…………..16

*Local 1239, Int'l Brotherhood of Boilermakers v. Allsteel, Inc.,*
    955 F. Supp. 78 (N.D. Ill. 1996)………………………………………………………. 15

*In re Organogenesis, Inc.,* 316 B.R. 574 (Bankr. D. Mass. 2004)……………………… 6

*In re Rauh,* 119 F.3d 46, 51 (1st Cir. 1997)………………………………………… 10

*United Paperworkers Int'l Union v. Alden Corrugated Container Corp.,*
    901 F. Supp. 426 (D. Mass. 1995)…………………………………………………… 13

*Watson v. Michigan Industrial Holdings, Inc.,* 311 F.3d 760, 762-65 (6th Cir. 2002).. 14

*Watts v. Marco Holdings,* 1998 WL 211770 (N.D. Miss.)………………………………..13

*In re Weinstein,* 217 B.R. 5, 8 (D. Mass. 1998)……………………………………… 9

*Wholesale & Retail Food Distribution Local 63 v. Santa Fe Terminal Services, Inc.,*
    826 F. Supp 326 (C.D. Cal. 1993)…………………………………………………… 15-16

*In re Woodman,* 379 F. 3d 1, 2 (1st Cir. 2004)………………………………………..8


### Statutes

29 U.S.C. Sec 2102 (b)(1)………………………………………………………… 11&18

29 U.S.C. Sec. 2102 (b)(3)……………………………………………7, 11, 13, 14, 15 & 16

29 U.S.C. Sec. 2104 (a)………………………………………………………… 11

29 U.S.C. Sec. 2102(a)…………………………………………………………………… 11

29 U.S.C. Sec. 2102 (b)…………………………………………………………………. 11

## Other Authorities

20 C.F.R. Sec. 639.7(d)………………………………………………11, 12 & 15

20 C.F.R. Sec. 639.9……………………………………………………… 11,15 & 16

20 C.F.R. Sec. 639.9(a)…………………………………………………18 & 20

*Worker Adjustment and Retraining Notification Act,*
  54 F.R. 16042 (April 20, 1989)………………………………………………20

## ISSUES PRESENTED FOR REVIEW

I.  WHETHER ORGANOGENESIS IS PRECLUDED FROM ARGUING, FOR THE FIRST TIME ON APPEAL, THAT THE SEPTEMBER 20, 2002 NOTICE TO EMPLOYEES SUBSTANTIALLY COMPLIED WITH THE WARN ACT BECAUSE THE ARGUMENT RAISES AN ISSUE THAT WAS NOT PRESENTED IN THE BANKRUPTCY COURT.

II.  WHETHER THE BANKRUPTCY COURT WAS CORRECT IN RULING THAT ORGANOGENESIS COULD NOT ASSERT THE "FALTERING COMPANY" DEFENSE BECAUSE IT GAVE NO NOTICE TO ITS EMPLOYEES PURSUANT TO THE WARN ACT.

III.  WHETHER THE BANKRUPTCY COURT WAS CORRECT IN FINDING THAT, IN ANY EVENT, ORGANOGENESIS COULD NOT SATISFY THE REQUIREMENTS OF THE "FALTERING COMPANY" DEFENSE.

## **STATEMENT OF FACTS**

Jane Andrews, Karen A. Giampaolo, Margaret Hirst, Dina Kazis-Panico, Hoda Mansour, John G. O'Brien, Daniel O'Reilly, Marc P. Pelletier, John C. Rodrigues, Jonathan E. Thayer, Tamyra A. Toole and Leon M. Wilkins, former employees of Organogenesis, Inc., concur with the Bankruptcy Court that "the facts are undisputed." *See* Memorandum of Decision of the Bankruptcy Court, Hillman, J., dated October 19, 2004 ("Mem. of Decision") at 2; *In re Organogenesis, Inc.*, 316 B.R. 574 (Bankr. D. Mass. 2004).

## SUMMARY OF ARGUMENT

1.  Organogenesis argues on appeal that the September 20, 2002 notice to employees substantially complied with the WARN Act.  In discovery and at trial, Organogenesis <u>admitted</u> that it gave <u>no</u> notice to employees pursuant to the WARN Act.  Accordingly, Organogenesis is precluded from raising, for the first time, an issue that was not presented in the Bankruptcy Court.

2.  Under 29 U.S.C. 2102(b)(3), employers who invoke the "faltering company" defense "shall give as much notice [to employees] as is practicable and at that time shall give a brief statement of the basis for reducing the notification period."  By admittedly failing to give *any* written notice to employees pursuant to the WARN Act, Organogenesis is precluded, as a matter of law, from asserting the "faltering company" defense.

3.  The Bankruptcy Court's finding that Organogenesis had no realistic chance, as of July 25, 2002, of obtaining new capital or business and therefore could not satisfy the requirements of the "faltering company" defense is well supported by record evidence and is not clearly erroneous.

## ARGUMENT

I.   ORGANOGENESIS IS PRECLUDED FROM ARGUING, FOR THE FIRST TIME ON APPEAL, THAT THE SEPTEMBER 20, 2002 NOTICE TO EMPLOYEES SUBSTANTIALLY COMPLIED WITH THE WARN ACT BECAUSE THE ARGUMENT RAISES AN ISSUE THAT WAS NOT PRESENTED IN THE BANKRUPTCY COURT.

In this appeal, Organogenesis, Inc. (the "Debtor" or "Appellant") argues, for the first time, that the September 20, 2002 termination notice to its employees (R. at 582-582) substantially complied with the Worker Adjustment and Retraining Notification Act (the "WARN Act"). *See* Appellant's Brief at 5, 21. Because the Debtor made no such contention before the Bankruptcy Court, it should not be allowed to do so on appeal. A party's failure to advance an issue before the bankruptcy court in the first instance forfeits its right to raise that issue on appeal. *In re Woodman*, 379 F.3d 1, 2 (1st Cir. 2004)

The record below is clear. In discovery the WARN Act Claimants (the "Claimants" or "Appellees") posed the following written Interrogatory No. 15 to the Debtor: "Did Organogenesis give any advance written notice in July, August or September 2002 to its employees pursuant to the WARN Act?" (R. at 599.) "No" was the sworn response given by Alan Ades, the Debtor's Co-chairman. (R. at 600) Although the Debtor subsequently amended its responses to interrogatories (R. at 605-608.), the one-word answer to Interrogatory No. 15 was not changed.

In the Joint Pre-Trial Statement submitted to Judge Hillman, the parties admitted that "(c) The Debtor gave no notice to the Claimants specifically

pursuant to the WARN Act of the termination of their employment." (R. at 613; Appellant's Brief at 21.)   The Joint Pre-Trial Statement provided, in part, that:

> The foregoing admissions have been made by the parties and the parties have specified the foregoing issues of fact and law remaining to be litigated.  Therefore, this Pre-Trial Statement shall supercede the pleadings and govern the course of the trial of this case.

(R. 633.)  The issue of whether the September 20 notice substantially complied with the WARN Act was not specified in the Joint Pre-Trial Statement.

Not surprisingly, the Bankruptcy Court found that "[t]he Debtor concedes: ....(3) the Debtor gave no notice to its employees of their termination pursuant to the Act." Mem. of Decision at 11.  The Bankruptcy Court also found: "The Debtor has admitted its failure to give any written notice whatsoever under the WARN Act to the Claimants." *Id.* at 13.

The Debtor now seeks to avoid the consequences of its admission by maintaining, for the first time, that the September 20 notice substantially complied with the WARN Act.  Appellant's Brief at 5, 15, 21.   Nowhere in the record of this case has the Debtor raised the issue of whether the September 20 termination notice complied--substantially or otherwise--with the WARN Act. Since this issue was not presented in the Bankruptcy Court, it should not be considered by this Court on appeal.  When a federal district court hears an appeal from a bankruptcy court, the principle is well settled that the appellate court will not consider an issue which was not before the trial court and which is first raised on appeal.  *In re Cadkey* Corp., 317 B.R. 19, 22 (D. Mass. 2004) (citing *In re Weinstein*, 217 B.R. 5, 8 (D. Mass. 1998) (declining to consider an argument on appeal to district court that was not raised in the bankruptcy court).

The fact that the Bankruptcy Court, in a footnote, discussed whether the September 20 notice constituted sufficient notice under the WARN Act does not mean the issue was properly before the Court for decision. Mem. of Decision at 13, n. 11. Clearly, the Court acted *sua sponte* and while "assuming without deciding" that the notice contained the required elements, Judge Hillman concluded that "…it nonetheless fails to provide WARN Act notice." *Id.*

It is simply too late for the Debtor to raise this issue and this Court should not entertain it. *See In re Rauh,* 119 F.3rd 46, 51 (1st Cir. 1997) ("As the bankruptcy court was never afforded an opportunity to consider the theory and authorities now advanced by the Trustee, nor to make any predicate factual findings, we decline the invitation to do so on appeal.")

II.    THE BANKRUPTCY COURT WAS CORRECT IN RULING THAT ORGANOGENESIS COULD NOT ASSERT THE "FALTERING COMPANY" DEFENSE BECAUSE IT GAVE NO NOTICE TO ITS EMPLOYEES PURSUANT TO THE WARN ACT.

On appeal, the Debtor challenges only the Bankruptcy Court's rejection of the "faltering company" defense. Appellant's Brief at 4, n. 1. In particular, the Debtor asserts that the Bankruptcy Court erred in ruling that the Debtor's admitted failure to give *any* written notice under the WARN Act precludes it from asserting the "faltering company" defense which requires an employer to have given reduced notice as soon as practicable. Mem. of Decision at 13; Appellant's Brief at 5,15,17.

<u>The WARN Act</u>

The WARN Act mandates that certain employers give written notice to affected employees at least sixty days before a plant closing or mass layoff. 29 U.S.C. 2102(a). In general, failure to comply with the sixty day notice requirement renders the employer liable to each terminated employee for back pay and benefits for each day in violation of the WARN Act. 29 U.S.C. 2104(a).

The WARN Act provides certain defenses under which the notification period may be reduced to less than sixty days. 29 U.S.C. 2102(b). One of these defenses is the "faltering company" defense. 29 U.S.C. 2102(b)(1). Significantly, both the WARN Act and the regulations promulgated thereunder by the Department of Labor provide that the "faltering company" defense does not excuse or eliminate the notice requirement, but rather permits less than sixty days notice while still requiring the employer to provide as much notice as is practicable to its employees. *See* 29 U.S.C. 2102(b)(3); 20 C.F.R. 639.9.

Thus, the WARN Act imposes an additional obligation on employers who seek to invoke the "faltering company" defense. It provides that an "employer relying" on the statutory exceptions "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. 2102(b)(3). In this regard, 20 C.F.R. 639.9 directs that "[t]he employer must, at the time notice is actually given, provide a brief statement of the reason for reducing the notice period, in addition to the other elements set out in 20 C.F.R. 639.7."

20 CFR 639.7(d) provides:

Notice to each affected employee who does not have a representative is to be written in language understandable to the employee and is to contain:
(1) A statement as to whether the planned action is expected to be permanent or temporary, and it the entire plant is to be closed, a statement to that effect;
(2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;
(3) An indication whether or not bumping rights exist;
(4) The name and telephone number of a company official to contact for further information.
The notice may include additional information useful to the employees such as information on available dislocated worker assistance, and, if the planned action is expected to be temporary, the estimated duration, if known.

### The Decision of Bankruptcy Court

In the instant case, it is undisputed that the Debtor gave no notice pursuant to the WARN Act to its employees, including the Claimants, when it closed its manufacturing facility in Canton on September 23, 2002. (R. 599-600; 613.) Given these facts, it was the Debtor's contention at trial that the "faltering company" defense excused its failure to issue a WARN Act notice on July 25, 2004, sixty days prior to the September 23, 2002 termination of the Claimants, *or at any time thereafter*. Mem. of Decision at 12 (emphasis added).

The Bankruptcy Court rejected this contention and held that, in failing to give *any* written notice under the WARN Act, the Debtor was precluded from asserting the "faltering company" defense because such defense *requires* an employer to have given reduced notice as soon as practicable. *Id.* at 13 (emphasis added).   In essence, the Bankruptcy Court determined that the "faltering company" defense is not available to an employer unless *some* WARN

Act notice was given to employees.  *See* 29 U.S.C. 2102(b)(3).  The Court then concluded that "..by failing to give any notice, the Debtor has failed to comply with the requirements of the WARN Act and is in violation thereof."  Mem. of Decision at 18.

In support of his conclusion, Judge Hillman cited *United Paperworkers Int'l Union v. Alden Corrugated Container Corp.,* 901 F. Supp. 426, (D. Mass. 1995). where employees received only verbal notice days before plant closings and the employers asserted the "faltering company" and "unforeseeable business circumstances" defenses.  Before concluding that the employers failed to prove that they qualified for such defenses, Magistrate Judge Collings wrote:

> "It should be noted at the outset that the defendants' entitlement to rely on these defenses at all is open to question."  *Id.* at 440.  "Having failed to provide any written notification... [the employers]... have plainly failed to adhere to the unequivocal mandate of both the statute and the regulations.  Although in the circumstances of this case this issue need not be resolved, it appears likely that this failure alone would constitute sufficient grounds to deny the applicability of the exemption provisions."

*Id.* at 440.

The Bankruptcy Court also cited *Barnett, et al. v. Jamesway Corp. (In re Jamesway Corp.),* 235 B. R. 329, 343 (Bankr. S.D.N.Y. 1999) (holding that "[b]ecause Jamesway failed to give WARN notice to the plaintiffs, it cannot assert ...the... 'faltering company' exception to the Act as a defense to liability.  For that reason we need not consider further whether... [the]...exception is applicable herein."; *Watts v. Marco Holdings,* 1998 WL 21770 (N.D. Miss.) (employer, who gave no notice at all, could not rely on "unforeseen business circumstances" exception) and *Childress v. Darby Lumber Inc.,* 126 F. Supp. 2d 1310, 1319 (D.

Mont. 2001) (employer who shut down sawmill liable under WARN Act regardless of "faltering company" defense because one day notice neither mentioned "a foreshortened notice, nor the specific reason why notice is foreshortened.")  *See also, Childress v. Darby Lumber Inc.*, 357 F.3d 1000 (9th Cir. 2004) in which the rulings of the District Court were affirmed.

The Debtor seeks to diminish the cases cited by the Bankruptcy Court as discussing the WARN Act defenses only in *dicta*.  Whether *dicta* or not, these decisions clearly recognize and acknowledge the mandate of 29 U.S.C. 2102(b)(3) for employers who invoke the WARN Act defenses.   For its part, the Debtor cites several cases where Courts have permitted defenses to be asserted under the WARN Act despite insufficient notice.  In *Watson v. Michigan Industrial Holdings, Inc.*, 311 F.3d 760, 762-765 (6th Cir. 2002) an employer was allowed to assert the "unforeseeable business circumstances" defense where the only written notice to employees was a posting announcing an immediate and permanent closing.   The Court, without any mention of 29 U.S.C. 2102(b)(3), affirmed a finding that the plant closing was due to unforseeable business circumstances thereby excusing the employer from providing advance notice under the WARN Act.  Since it is silent as to 29 U.S.C. 2102(b)(3), the *Watson* decision has no direct bearing on the instant case.

<u>Appellant's Arguments</u>

The Debtor now argues that the September 20 notice given to employees three days before the plant closing, substantially complies with the WARN Act. This contention does not withstand scrutiny.  First, the Debtor has conceded that

the notice does not contain "a brief statement of the reason for reducing the notice period" as required by 29 U.S.C. 2102(b)(3) and 20 C.F.R. 639.9. Appellant's Brief at 5, 17. Second, a comparison of the September 20 notice (R. 581-582) with the requirements of 20 C.F.R. 639.7(d), enumerated on page 12 above, shows that the notice does not state whether the plant closing is expected to be permanent or temporary and does not state whether bumping rights exist.

Finally, the law is well settled that an employer has a duty to provide as much notice as is practicable, including a statement of the basis for reducing the notification period, when relying on the "faltering company" or the "unforeseen business circumstances" defenses. *See Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996) (law firm that gave 30-day written notice of shut down cannot rely on faltering company defense where notice stated that reduced notice period was due to "unforeseen business circumstances" because notice did not set forth facts explaining why the shortened notice period was necessary); *Graphic Communications Int'l Union, Local 1B v. Bureau of Engraving, Inc.*, 2003 WL 21639146, at *5 (D. Minn. 2003) (employer met burden of showing unforseeable business circumstances exception applied, but nonetheless did not fulfill its duty to provide as much notice as practicable); *Local 1239, Int'l Brotherhood of Boilermakers v. Allsteel, Inc.,* 955 F. Supp. 78 (N.D. Ill 1996) (employer failed to give notice as soon as practicable; WARN Act requires that employees receive notice of plant closings when they become foreseeable, not when they are absolute certainties); *Wholesale & Retail Food*

*Distribution Local 63 v. Santa Fe Terminal Services, Inc.,* 826 F. Supp. 326 (C.D. Cal. 1993) (unforeseeable business circumstances exception applied, but employer violated WARN Act for six days by not giving notice as soon as practicable when it did not provide written notice until after it provided telephone notice); *Jones v. Kayser-Roth Hosiery, Inc.,* 748 F. Supp. 1276 (E.D. Tenn. 1990) (employer violated WARN Act when it failed to notify employees as soon as practicable where employer learned of business circumstances leading to shut down thirty days before notifying employees, notwithstanding subjective belief by employer's officer that such circumstances were not firm and irreversible).

The Debtor also argues that "alleged defects" and technical flaws in the September 20 notice to employees should not preclude it from asserting the "faltering company" defense. Appellant's Brief at 5, 15. This argument does not survive the "unequivocal mandate" of 29 U.S.C. 2102(b)(3) and 20 C.F.R. 639.9.

While conceding that its notice "did not specifically cite the WARN Act and did not specifically state that the notice period was being reduced from sixty days to three and why..."(Appellant's Brief at 5, 21), the Debtor, nonetheless, argues that the notice "substantially complies" with the WARN Act. This argument is patently flawed. The WARN Act and its regulations are clear and specific and do not excuse compliance because of "technical" flaws and deficiencies. In short, the Debtor's basic argument is that its failure to comply with the WARN Act should be excused or have no consequences. "Adopting this position would delete the brief statement requirement from the statute and treat Congress'

language in Section 2102(b)(3) as meaningless." *Grimmer v. Lord Day & Lord, supra.* at 258.

III.    THE BANKRUPTCY COURT WAS CORRECT IN FINDING THAT, IN ANY EVENT, ORGANOGENESIS COULD NOT SATISFY THE REQUIREMENTS OF THE "FALTERING COMPANY" DEFENSE.

Having decided that the Debtor's failure to give *any* written notice under the WARN Act precluded it from asserting the "faltering company" defense, the Bankruptcy Court, nevertheless, addressed the merits of such defense. Mem. of Decision at 14. The Bankruptcy Court found that the Debtor did not satisfy the requirements of the "faltering company" defense, a conclusion that the Debtor now challenges as erroneous. Appellant's Brief at 2, 15. This finding, however, was secondary and not dispositive of the case. Rather, the Bankruptcy Court reached its primary conclusion that the Debtor violated the WARN Act on the basis of the Debtor's failure to give any notice under the WARN Act which precluded it from asserting the statutory defenses. Mem. of Decision at 13, 18.

The Claimants submit that if they prevail in Argument I or II herein, there will be no need for this Court to address Argument III. In any event, the Claimants contend that the Bankruptcy Court was correct in ruling that the Debtor failed to satisfy the requirements of the "faltering company" defense.

<u>Faltering Company Defense</u>

The "faltering company" defense provides:

> An employer may order the shutdown of a single site of employment before the conclusion of the 60-day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained,

> would have enabled the employer to avoid or postpone the
> shutdown and the employer reasonably and in good faith
> believed that giving the notice required would have precluded
> the employer from obtaining the needed capital or business.

29 U.S.C. 2102(b)(1).

The "faltering company" exception applies to "plant closings"…and should be narrowly construed. 20 CFR 639.9(a). In order for the Debtor to establish this defense, the regulations require (1) that it identify specific actions taken to seek new capital or business at the time when the 60-day notice would have been due; (2) it must have had a realistic opportunity to obtain the sought after financing or business; (3) such financing or business sought must have been sufficient, if obtained, to postpone or prevent the plant closing; and (4) it had to believe reasonably and in good faith that giving the required termination notice would have precluded the ability to obtain the needed financing or business. 20 C.F.R. 639.9(a).

Applying the foregoing standards, the Bankruptcy Court found that the Debtor could not satisfy the second element concerning the opportunity to obtain financing or business. In concluding that as of July 25, 2002 (the date when 60-day notice was due to employees), there was no realistic chance of the Debtor obtaining the sought after financing from a third party or Novartis, the Bankruptcy Court made the following factual findings based on the undisputed facts: (a) the Debtor (then engaged in critical negotiations with Novartis over the Debtor's re-acquisition of the marketing rights to a living skin supplement called *Apligraf* ) was notified by letter from Novartis that negotiations had been terminated prior to July 11, 2002; (b) any third party financing depended upon re-acquiring the

marketing rights from Novartis, which did not seem realistic; (c) financing proposals of Broadmark and Union Square Capital contained no commitments; and (d) as of July 25, 2002, although the Debtor made a new proposal to create a joint company with Novartis, no commitment or agreement could be reached. Mem. of Decision at 16.

While the Debtor may disagree with the conclusion of the Bankruptcy Court that, as of July 25, 2002, the Debtor had no realistic chance to obtain the needed financing, there is nothing in the record to suggest that this finding of fact was "clearly erroneous". Indeed, the undisputed facts in the record fully support the Court's conclusion.

In mid-July 2002, just before the WARN Act notice was due, the Debtor issued a press release stating that "the current relationship with Novartis is unsustainable". R. at 414. The press release also announced that the Debtor had only $3.7 million in cash on hand and was burning cash at the rate of $1.1 million per month. Id. In effect, the Debtor was telling Novartis (and others) that it had about three months to reach an agreement over the marketing rights. This public statement effectively crippled any real opportunity the Debtor had to reach an agreement with Novartis in the short term. As a result, the Debtor had no real leverage with Novartis. In fact, the Debtor had no real value as an acquisition target to any one except Novartis. At the same time, Novartis had no incentive to change its relationship as the Debtor's sole customer for Apligraf.

Likewise, the effort of the Debtor to raise capital from third parties was

doomed, as a practical matter. No investor or lender was interested in putting money into the Debtor unless the Debtor controlled the marketing rights to *Apligraf*, its primary product. Gary Gillheeney, the Debtor's Chief Financial Officer, Steven Bernitz, the Debtor's CEO and Alan Ades, the Debtor's Chairman each testified at trial that every potential deal for third party financing depended on re-acquiring the marketing rights. See Gillheeney: R. at 118-119; Ades: R. at 126-127; Bernitz: R. at 240-241. At the same time Novartis had little incentive in the summer of 2002 to relinquish the *Apligraf* marketing rights. In fact, it did not do so until after the Debtor had filed for Chapter 11 bankruptcy in October 2002 when Novartis became concerned about the potential for adverse publicity in Boston where it planned to the locate a new research center in Cambridge.

Thus, the record fully supports the Bankruptcy Court's conclusion that, as of July 25, 2002, the Debtor had no realistic opportunity to obtain financing or business from a third party or Novartis. See 20 CFR 639.9(a). As a result, the Court determined that the Debtor could not satisfy the requirements of the "faltering company" defense, even if it applied in this case. Mem. of Decision at 17.

The Bankruptcy Court emphasized that the WARN Act requires that even when the faltering company defense applies, notice must be given as soon as is practicable. *Id.* "Indeed, when the defense applies, 'the need for notice will only be triggered if the employer fails to obtain the business or financing it seeks.' " *Id.* Citing *Worker Adjustment and Retraining Notification Act*, 54 F.R. 16042 (April 20, 1989). The Court found that, as of September 20, 2002, three days before

the shutdown, the Debtor's negotiations with Novartis had ended and it was no longer impractical for the Debtor not to give proper notice to its employees as required to the WARN Act.  Memo. of Decision at 18.   In failing to do so, the Debtor violated the statute.

The Court's determination that the Debtor did not meet the requirements of the "faltering company" defense was not "clearly erroneous" and therefore must stand.

## CONCLUSION

For all the reasons set forth above, the decision of the Bankruptcy Court that the Debtor violated the WARN Act should be affirmed.

Respectfully submitted,

THE WARN ACT CLAIMANTS

By their attorney,

Kevin B. Callanan, BBO#070620
Law Office of Kevin B. Callanan
17 Accord Park Drive – Suite 101
Norwell, Massachusetts 02061
Tel: 781-878-1604 / Fax: 781-878-3154
E-mail: kbcallanan@msn.com

## Certificate of Service

I certify that a true copy of the foregoing Brief of the Appellees, The WARN Act Claimants, has been served on counsel for Organogenesis, Inc., Andrew Z. Schwartz, Esq., and Joshua A. McGuire, Esq., Foley Hoag LLP, 155 Seaport Boulevard, Boston, MA 02210 by hand on January 5, 2005.

Kevin B. Callanan