UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ORGANOGENESIS INC.,<br><br>Appellant,<br><br>v.<br><br>JANE ANDREWS, KAREN A. GIAMPAOLO, MARGARET HIRST, DINA KAZIS-PANICO, HODA MANSOUR, JOHN G. O'BRIEN, DANIEL O'REILLY, MARC P. PELLETIER, JOHN C. RODRIGUES, JONATHAN E. THAYER, TAMYRA A. TOOLE, and LEON M. WILKINS,<br><br>Appellees. | )<br>)<br>)<br>)<br>)   Case No. 04-CV-12549-RWZ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| In re:<br><br>ORGANOGENESIS INC.,<br><br>Debtor. | )<br>)<br>)   Chapter 11<br>)   Case No. 02-16944-WCH<br>)<br>)<br>) |

## REPLY BRIEF OF APPELLANT ORGANOGENESIS INC.

Andrew Z. Schwartz (BBO #544653)
Joshua A. McGuire (BBO #651877)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Tel.: (617) 832-1000
Fax: (617) 832-7000
bctnotices@foleyhoag.com

Dated: January 21, 2004

# TABLE OF CONTENTS

Table Of Authorities .................................................................................................................. i i

Preliminary Statement.................................................................................................................. 1

Argument .................................................................................................................................... 3

I.     The Debtor Is Not Precluded From Arguing That Its Substantial Compliance With
The WARN Act's Notice Requirements Allows It To Assert The Faltering Company
Defense. ........................................................................................................................... 3

II.    The Cases Cited By The Debtor Demonstrate That Proper Notice Is Not A
Prerequisite To Application Of The Statutory Defenses. .................................................. 6

III.   The Undisputed Facts Demonstrate That Novartis Had More Than Ample Incentive
To Negotiate With The Debtor In July 2002, And The Debtor's Opportunity To
Obtain The Necessary Financing Was Reasonable. .......................................................... 8

Conclusion .................................................................................................................................. 9

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Local 397, International Union of Electronic, Electrical, Salaries, Machine and Furniture Workers, AFL-CIO v. Midwest Fasteners, Inc.*, 763 F. Supp. 78 (D.N.J. 1990) .......................................................................................7

*In re Old Electralloy Corp.*, 162 B.R. 121 (W.D. Pa. 1993) ...............................................7

*Wallace v. Detroit Coke Corp.*, 818 F. Supp. 192 (E.D. Mich. 1993)................................7

*Watson v. Michigan Industrial Holdings, Inc.*, 311 F.3d 760 (6th Cir. 2002)....................7

### FEDERAL STATUTES

29 U.S.C. §2102(b)(3) ...........................................................................................................7

## **Preliminary Statement**

Appellant Organogenesis Inc., the reorganized debtor ("Organogenesis" or the "Debtor") in the underlying Chapter 11 case (the "Bankruptcy"), submits this reply to the Brief Of Appellees The WARN Act Claimants. The bankruptcy court erred in finding, as a matter of law, that the Debtor could not rely at all on the defenses set forth in the WARN Act because it did not provide notice that complied with each and every technical requirement of the WARN Act. Numerous cases applying the WARN Act have allowed employers to rely on the WARN Act defenses where no WARN Act notice was given. Additionally, the bankruptcy court's decision is erroneous because the Debtor substantially complied with the WARN Act's notice requirements. The Debtor submits that, under these circumstances, the bankruptcy court erred in denying the Debtor the benefits of its otherwise valid "faltering company" defense.

The WARN Act Claimants have taken the position that the Debtor is precluded on appeal from asserting its substantial compliance with the WARN Act on the ground that the issue allegedly was not sufficiently presented to the bankruptcy court. As the WARN Act Claimants concede, however, the issue was addressed by the bankruptcy court. Moreover, if anyone should be penalized for not properly framing the issue below, it is the WARN Act Claimants, not the Debtor. The WARN Act Claimants did not clearly assert, either in the Joint Pre-Trial Statement, at trial, or in their post-trial briefs, that the manner in which the Debtor notified its employees of their termination was fatal to any and all substantive WARN Act defenses. If, as the WARN Act Claimants now suggest, the undisputed facts precluded the Debtor from asserting *any* defenses under the WARN Act, then there would have been no need for a two-day trial and the WARN Act Claimants should simply have filed a dispositive motion. Their failure to do so is consistent with the Debtor's position on the law: where an employer, who has an otherwise valid defense

under the WARN Act, has made a good faith effort to achieve the central goals of the WARN Act, but does not meet each and every technical notice requirement, the employer may nevertheless avail itself of the defenses.

The WARN Act Claimants have not even attempted to distinguish or otherwise grapple with most of the cases cited by the Debtor in support of this proposition. Nor have the WARN Act Claimants explained why a more rigid rule would represent a fair balancing of the competing interests at stake under the WARN Act. All the WARN Act Claimants are able to do is point to cases where, in what they do not dispute is dicta, some courts have viewed such a rigid rule favorably.

Finally, the WARN Act Claimants have no answer to the undisputed facts that directly contradict the bankruptcy court's conclusion that the Debtor did not meet one element of the faltering company defense, *i.e.*, that the Debtor's opportunities to obtain additional financing during the relevant time period were realistic. The facts, which the bankruptcy court acknowledged were undisputed, demonstrate that the Debtor's prospects were highly realistic; indeed, they were ultimately successful. The WARN Act Claimants' assertions about the timing of Novartis's motives to help the Debtor are inaccurate, as the record conclusively demonstrates. To the extent that the bankruptcy court's holding regarding the Debtor's ability to meet this element of the faltering company defense, based on facts it acknowledged were undisputed, is itself a finding of fact, then it is clearly erroneous.

**Argument**

I.  **The Debtor Is Not Precluded From Arguing That Its Substantial Compliance With The WARN Act's Notice Requirements Allows It To Assert The Faltering Company Defense.**

The bankruptcy court held that, because the Debtor did not provide its employees with "proper notice required by the WARN Act" on September 20, 2002, three days before it shut its plant, the Debtor could not avoid any liability under the faltering company defense. (Mem. of Decision at 18.) The corollary of this holding is that, if "proper notice" had been given on September 20, then the Debtor could assert the defense as to the preceding 57 days. This hyper-technical interpretation of the statute cannot withstand scrutiny. For the reasons set forth in the Debtor's opening brief, as recognized by numerous courts the failure to give notice that complies with the WARN Act's specific requirements does not categorically deprive an employer of the otherwise available statutory defenses.

The bankruptcy court held that the Debtor had failed to comply with the requirements of the WARN Act because it failed to give "*any notice*[.]" Id. (emphasis in original). The Debtor disputes this statement, based on the undisputed facts. The September 20, 2002 termination notice sent by the Debtor's management to all employees -- introduced into evidence by the WARN Act Claimants -- specifically notes that:

> We have worked extremely hard to come to an agreement with Novartis over the future of Apligraf. Unfortunately, Novartis is no longer interested in purchasing Organogenesis' manufacturing rights and assets and has cut off all negotiations of a settlement of our longstanding disputes. We are therefore terminating our relationship with Novartis and will file for Chapter 11 bankruptcy protection in the next few days.

(R581.) As noted in the Debtor's opening brief, this statement, in the context of the information the Debtor's management had provided to its employees about the Novartis negotiations over the

course of the preceding summer, amounted to notice that substantially complied with the WARN Act's requirement that the termination notice include a brief statement setting forth the reason that the notice period was shortened. The bankruptcy court's conclusion that the Debtor failed to give "*any notice*" is incorrect, and its decision is erroneous.

In the Appellees' Brief, the WARN Act Claimants take the position that the Debtor has waived any argument that the September 20, 2002 termination notice constituted substantial compliance with the WARN Act. The WARN Act Claimants assert that the Debtor did not sufficiently raise this issue below, despite the fact that the bankruptcy court actually *considered* the sufficiency of the September 20, 2002 notice and found that it failed to provide "a brief explanation for reduction of the 60-day notice period." Mem. of Decision at 13, n. 11. The Debtor asserts that this conclusion was wrong in light of the content and context of the notice. The Debtor cannot be precluded from making this argument on the grounds that the bankruptcy court did not first have an opportunity to evaluate it when the court did, in fact, address the issue.

In this regard, the bankruptcy court's decision adopted an argument which the WARN Act Claimants, if anyone, failed adequately to identify in the Joint Pre-Trial Statement,[1] and which the WARN Act Claimants did not stress either at trial or in the post-trial briefs. The Debtor has done nothing that would preclude it from asserting this flaw in the bankruptcy court's decision.

The bankruptcy court's Pre-Trial Order included a deadline for dispositive motions. (R66.) The WARN Act Claimants did not file any such motion. If, as the WARN Act Claimants

---

[1] The Joint Pre-Trial Statement was not included in the Record On Appeal. Nevertheless, the Statement, Docket No. 851 in the bankruptcy court, has been cited by both parties and its contents have been put at issue by the WARN Act Claimants. Therefore, a copy has been attached to this Reply Brief as Exhibit A so that the Court may review its contents.

assert, the Debtor's failure to give "proper" WARN Act notice precluded all statutory defenses, then there would have been no need for a two-day trial, and a dispositive motion would have been appropriate. Given the WARN Act Claimants' decision to proceed directly to a trial they now say was unnecessary, and to introduce the September 20 notice into evidence, their argument that the Debtor has waived its right to rely on the September 20 notice rings hollow.

As the WARN Act Claimants acknowledge, the Joint Pre-Trial Statement provided that it superseded the pleadings regarding the "issues of fact and law remaining to be litigated." See Joint Pre-Trial Statement, attached hereto as Exhibit A. The contents of the Joint Pre-Trial Statement make clear that the Debtor preserved the issue of whether notice provided to its employees was sufficient under the WARN Act, and that the WARN Act Claimants did not put the Debtor on notice that they took the position that allegedly insufficient notice was fatal to all statutory defenses. The admitted facts state that "[t]he Debtor gave no notice to the Claimants *specifically* pursuant to the WARN Act of the termination of their employment." *See* Exhibit A at 2 (emphasis added). This qualification made clear that the Debtor had provided at least some notice. The Debtor plainly did not admit, as the bankruptcy court asserted, that it gave *no* notice.[2]

The issues of fact remaining to be litigated at trial, according to the Joint Pre-Trial Statement, all related to the Debtor's defenses. *Id.* at 2-3. Similarly, the issues of law remaining to be litigated did *not* include whether the Debtor was precluded as a matter of law from

---

[2] The WARN Act Claimants' reliance on the Debtor's interrogatory response is misplaced. As the language used in the Joint Pre-Trial Statement demonstrates, by the time the parties were preparing for trial the Debtor was drawing the distinction between notice that was insufficient under the WARN Act and no notice at all. The Joint Pre-Trial Statement put the WARN Act Claimants on notice that the Debtor's position was that *some* notice had been given, and that such notice was relevant to the Debtor's defenses. The WARN Act Claimants then proceeded to introduce the Debtor's notice into evidence.

asserting any of the defenses, but instead broadly defined the question as "Whether the Debtor violated the WARN Act." Id. at 3.

At trial and in their post-trial briefs, the WARN Act Claimants still did not squarely advance the argument that a technically flawed notice barred any and all defenses under the WARN Act. The post-trial briefs cited no cases on this point; the Debtor's first opportunity to address the cases on which the bankruptcy court relied in reaching its conclusion was thus on appeal.

Simply put, the issue of whether the September 20, 2002 termination notice was sufficient to allow the Debtor to rely on the faltering company defense, or indeed whether the defense could be raised even in the absence of *any* notice as the Debtor has argued in the first instance, was never squarely presented to the bankruptcy court. The WARN Act Claimants are as responsible for this as anyone. In these circumstances, the Debtor should not be barred on appeal from presenting an argument that the bankruptcy court considered, even though the issue was not made the focus of the proceedings below.

## II.    The Cases Cited By The Debtor Demonstrate That Proper Notice Is Not A Prerequisite To Application Of The Statutory Defenses.

In its decision, the bankruptcy court relied on several cases in which courts articulated the strict rule erroneously adopted by the bankruptcy court, prohibiting any reliance on the WARN Act defenses where no notice or technically flawed notice was given to employees. As the Debtor observed in its opening brief on appeal, the statements of the law on which the bankruptcy court relied were all in dicta, and the WARN Act Claimants do not dispute this point. *See* Opp. Br. at 14.

The Debtor, on the other hand, in its opening brief cited a number of cases reflecting the view that the WARN Act defenses are available even where notice may not meet the technical

- 6-

requirements of the WARN Act. *See Watson v. Michigan Industrial Holdings, Inc.*, 311 F.3d

760, 762-65 (6th Cir. 2002); *In re Old Electralloy Corp.*, 162 B.R. 121, 126 (W.D. Pa. 1993);

*Wallace v. Detroit Coke Corp.*, 818 F. Supp. 192, 197-98 (E.D. Mich. 1993); *Local 397,*

*International Union of Electronic, Electrical, Salaries, Machine and Furniture Workers, AFL-*

*CIO v. Midwest Fasteners, Inc.*, 763 F. Supp. 78, 82-84 (D.N.J. 1990). The WARN Act

Claimants attempt to distinguish only one of these cases, *Watson*, on the grounds that it was

"silent as to 29 U.S.C. 2102(b)(3)." (Opp. Br. at 14.) While it is true that the *Watson* court, in

setting forth the sound policy reasons behind permitting employers to rely on the WARN Act

defenses, did not specifically cite to Section 2102(b)(3), nevertheless the court did apply a

statutory defense despite evidence of insufficient notice. Under *Watson* and the other cases cited

above, the Debtor is not precluded from relying on the faltering company defense.

    Furthermore, the WARN Act Claimants cannot distinguish the other decisions cited by

the Debtor in its opening brief, nor do they attempt to do so. The *Old Electralloy* court

specifically addressed an employer's compliance with Section 2102(b)(3) where the employer

had given notice that did not technically comply with the WARN Act and held that the faltering

company exception still applied. *In re Old Electralloy Corp.*, 162 B.R. at 126. Similarly, the

*Wallace* court, after acknowledging the text of Section 2102(b)(3), analyzed the merits of an

employer's faltering company and unforeseeable circumstances defenses and not the sufficiency

of the notice given to employees two hours before the facility was closed. *Wallace*, 818 F. Supp.

at 197-98. The *Local 397* court analyzed the merits of an employer's WARN Act defenses

where *no notice* had been given. *Local 397*, 763 F. Supp. at 82-84. For the reasons set forth in

the Debtor's opening brief, these cases reflect the better rule, which is more consistent with the

balance of interests at stake under the WARN Act. Denying the Debtor the protection of its

- 7-

otherwise valid faltering company defense would be manifestly unjust under the circumstances. This is particularly true insofar as notice in this case would have been required, if at all, at the tail end of the 60-day WARN period. Whether a notice sent on day 57 of 60 was technically proper in all respects should not be determinative of whether an employer can invoke the faltering company defense as to the preceding 56 days.

### III. The Undisputed Facts Demonstrate That Novartis Had More Than Ample Incentive To Negotiate With The Debtor In July 2002, And The Debtor's Opportunity To Obtain The Necessary Financing Was Reasonable.

One fact sets this case apart from all of the WARN Act decisions cited by both parties: here, the Debtor's faltering company defense cannot be in doubt, because the Debtor ultimately succeeded in obtaining the financing necessary to avoid the plant shutdown, albeit after, though not long after, it had closed its manufacturing facility temporarily and terminated its workforce. This compelling and undisputed fact demonstrates that the bankruptcy court's findings that the Debtor's prospects were not realistic, and that its opportunity to obtain the needed financing was not "reasonable," are simply incorrect. To the extent that these are findings of fact (despite the bankruptcy court's observation that the "facts are undisputed"), they are clearly erroneous.

The WARN Act Claimants attempt to bolster the bankruptcy court's ruling by asserting that, as of July 25, 2002, "the Debtor had no real leverage with Novartis." (Opp. Br. at 19.) The WARN Act Claimants are wrong. The WARN Act Claimants acknowledge that, when Novartis ultimately did reach an agreement with the Debtor in October 2002, Novartis was motivated in large part by its "concern[] about the potential for adverse publicity in Boston where it planned to the [sic] locate a new research center in Cambridge." (Opp. Br. at 20.) The evidence at trial concerning Novartis's plans to move into the old New England Confectionary Company building

demonstrated that Novartis had been planning to move to the Boston area at least since May

2002.  (R577-80.)  This preceded the beginning of the WARN Act period by several months.

### Conclusion

For the reasons set forth above, the decision of the Bankruptcy Court should be reversed,

and the case should be remanded with the instruction that the Bankruptcy Court enter an order

sustaining the Debtor's objections to the WARN Act Claims.

Respectfully submitted,

ORGANOGENESIS INC.,

By its attorneys,

/s/  Joshua A. McGuire
Andrew Z. Schwartz (BBO #544653)
Joshua A. McGuire (BBO #651877)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Tel.:  (617) 832-1000
Fax:  (617) 832-7000
bctnotices@foleyhoag.com

Dated: January 21, 2005

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| ORGANOGENESIS INC., | ) | Case No. 02-16944-WCH |
| | ) | |
| Debtor. | ) | |

## JOINT PRE-TRIAL STATEMENT OF WARN ACT CLAIMANTS AND THE REORGANIZED DEBTOR

Pursuant to the Court's December 11, 2003 Pre-Trial/Hearing Order, as amended on February 12, 2003, Jane Andrews, Karen A. Giampaolo, Margaret Hirst, Dina Kazis-Panico, Hoda Mansour, John G. O'Brien, Daniel O'Reilly, Marc P. Pelletier, John C. Rodrigues, Jonathan E. Thayer, Tamyra A. Toole, and Leon M. Wilkins (the "Claimants") and Reorganized Organogenesis Inc. (the "Debtor") submit this Joint Pre-Trial Statement:

1.    Narrative statement of the controversy:

The Claimants allege that the Debtor violated the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq.*, by terminating all its employees (including the Claimants) and closing its facility in Canton, Massachusetts on September 23, 2002 without giving the 60 days advance written notice required by the statute. 29 U.S.C. § 2102(a). Two days later, on September 25, 2002, the Debtor filed for bankruptcy protection under Chapter 11. The Claimants seek 60 days pay and benefits as provided in the WARN Act for the Debtor's alleged pre-petition failure to give notice prior to closing its Canton facility.

The Debtor denies that it terminated all of its employees, denies violating the WARN Act, and asserts the "faltering company" exception, 29 U.S.C. § 2102(b)(1), and the "unforeseeable business circumstances" exception, 29 U.S.C. § 2102(b)(2)(A), under the WARN Act, among other defenses.

The Claimants contend that neither exception applies in this case.

2.    The following facts are admitted and require no proof:

(a)    On or before September 23, 2002, the Debtor was a business enterprise employing 100 or more employees, excluding part-time employees, at its facility in Canton, Massachusetts.

(b)    On or before September 23, 2002, the Debtor terminated at least 50 employees, including the Claimants.

(c)    The Debtor gave no notice to the Claimants specifically pursuant to the WARN Act of the termination of their employment.

3.    The following issues of fact, and not others, remain to be litigated:

(a)    Whether the Debtor was required, pursuant to the WARN Act, to give 60 days written notice to the Claimants of their termination.

(b)    If so, whether the Debtor was actively seeking capital or business which, if obtained, would have enabled the Debtor to avoid or postpone the plant closing, and the Debtor reasonably and in good faith believed that giving the notice required would have precluded the Debtor from obtaining the needed capital or business.

-2-

(c)    Alternatively, if (a) is proven, whether the "mass layoff," as defined by the WARN Act, was caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

(d)    If (a) is proven, whether the amounts asserted in the Claimants proofs of claim accurately reflect the amounts payable under the WARN Act.

4.    <u>The following issues of law, and not others, remain to be litigated:</u>

(a)    Whether the Debtor violated the WARN Act.

(b)    If so, whether the back pay and benefits claimed for pre-petition violations of the WARN Act constitute wages earned within 90 days before cessation of the Debtor's business and are entitled to third preference priority, up to $4,650.00, under Section 507(a)(3) of the Bankruptcy Code.

(c)    If so, whether any amounts payable to the Claimants in excess of $4,650.00 should be treated as general unsecured claims.

5.    <u>Attached is a list of exhibits intended to be offered by each party. The parties have exchanged copies of all listed exhibits. No other exhibits, other than exhibits to be used for impeachment only, will be offered into evidence.</u>

See attached lists of Claimants' Exhibits and Debtor's Exhibits.

6.    <u>The parties have exchanged a list of witnesses to be called at trial.</u>

See attached lists of Claimants' Witnesses and Debtor's Witnesses.

7.    <u>Other matters that might affect the trial.</u>

(a)    Gary Gillheeney, who is listed on both parties' witness lists, may be unavailable on the day of trial.

-3-

(b)    The parties have entered into a Confidentiality Stipulation, pursuant to which it may be necessary to prevent the public disclosure of some documents and evidence that may be offered at trial.

8.    <u>All discovery desired to be conducted has been completed.</u>

9.    <u>The parties are ready for trial.</u>

See #7 above, with respect to the availability of Mr. Gillheeney.

10.    <u>The trial is now estimated to take one full day.</u>

11.    The foregoing admissions have been made by the parties and the parties have specified the foregoing issues of fact and law remaining to be litigated.  Therefore, this Pre-Trial Statement shall supercede the pleadings and govern the course of the trial of this cause.

Respectfully submitted,

THE WARN ACT CLAIMANTS

JANE ANDREWS, KAREN A.
GIAMPAOLO, MARGARET HIRST,
DINA KAZIS-PANICO, HODA
MANSOUR, JOHN G. O'BRIEN,
DANIEL O'REILLY, MARC P.
PELLETIER, JOHN C. RODRIGUES,
JONATHAN E. THAYER, TAMYRA A.
TOOLE, and LEON M. WILKINS

By their attorney,

_Kevin B. Callanan_

Kevin B. Callanan (BBO #070620)
Law Office of Kevin B. Callanan
17 Accord Park Drive – Suite 101
Norwell, Massachusetts 02061
Tel: 781-878-1605 / Fax: 781-878-3154

Dated: April 8, 2004

ORGANOGENESIS INC.

By its attorneys,

Andrew Z. Schwartz (BBO #544653)
aschwartz@foleyhoag.com
Joshua A. McGuire (BBO #651877)
jmcguire@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel.:  (617) 832-1000
Fax:  (617) 832-7000

Dated: April 8, 2004

In re: Organogenesis, Inc.

### SECOND AMENDED LIST OF EXHIBITS

1.   EXHIBIT D - WARN ACT CLAIMS.
2.   Steven Bernitz Memo dated September 20, 2002.
3A.  Affidavit of Jane Andrews dated September 29, 2003.
3B.  Affidavit of Karen A. Giampaolo dated September 18, 2003.
3C.  Affidavit of Margaret Hirst dated September 19, 2003.
3E.  Affidavit of Dina Kazis-Panico dated September 26, 2003.
3F.  Affidavit of Hoda Mansour dated September 19, 2003.
3G.  Affidavit of John G. O'Brien dated September 20, 2003.
3H.  Affidavit of Dan O'Reilly dated September 19, 2003.
3 I.  Affidavit of Marc P. Pelletier dated September 20, 2003.
3K.  Affidavit of John C. Rodriques dated September 22, 2003.
3L.  Affidavit of Jonathan E. Thayer dated October 11, 2003.
3M.  Affidavit of Tamyra A. Toole dated September 24, 2003.
3N.  Affidavit of Leon M. Wilkins dated September 21, 2003.
4.   Organogenesis Press Release dated July 11, 2002.
5.   Organogenesis Press Release dated September 13, 2002.
6.   Affidavit of Jane Andrews dated November 30, 2003.
7.   Steven Bernitz E-Mail dated August 2, 2002.
8.   Jeffrey Dow Letter dated September 7, 2002.
9.   Steven Bernitz Memo dated September 9, 2002.
10.  Steven Bernitz Memo dated September 16, 2002.
11.  Employees' Memo To Board of Directors dated September 18, 2002.

12.  Novartis letter to Steven Bernitz dated July 17, 2002.
13.  Novartis letter to Jeffrey Dow dated August 22, 2002.
14.  Novartis letter to Board of Director, Organogenesis, Inc. dated August
     30, 2002.
15.  Jeffrey Dow letter to Novartis dated September 6, 2002.
16.  Novartis letter to Jeffrey Dow dated September 10, 2002.
17.  Jeffrey Dow letters to Novartis dated September 10 and 12, 2002.
18.  Novartis letter to Jeffrey Dow dated September 24, 2002.
19.  Steven Bernitz memo to Dr. Singh (undated).
20.  Steven Bernitz memo to G. Gillheeney, et al dated May 17, 2002.
21.  Richard Shaw memo to Steven Bernitz, et al dated July 26, 2002.
22.  Dr. Singh letter to Dr. Sabolinski dated February 28, 2002.
23.  ICN Pharmaceuticals memo to Organogenesis dated April 25, 2002.
     With Confidentiality Agreement attached.
24.  Memo from Amy Mumma to Steve (undated).
25.  Memo from Marc LaMagna to Gary dated June 18, 2002.
26.  Union Square Capital Financial Restructuring Analysis of
     Organogenesis (undated).

27.   Broadmark Financing Proposal for G.Gillheeney dated June 18, 2002.
28.   Eric Gier letter to G. Gillheeney dated June 18, 2002.
29.   Karl Kirwan memo to Laurie dated April 5, 2002.
30.   Laurie memo (un-addressed and undated)
31.   Steven Bernitz letter to Anthony Rosenberg dated June 24, 2002.
32.   Steven Bernitz letter to Reto Brandli dated July 2, 2002.
33.   Novartis letter to Steven Bernitz dated July 17, 2002.
34.   Kimberly Urdahl letter to Jeffrey Dow dated August 22, 2002.
35.   Jeffrey Dow letter to Reto Brandli dated August 28, 2002.
36.   Robert Pelzer letter to Board of Directors Organogenesis dated
      August 30, 2002 with attachment.
37.   Jeffrey Dow letter to Robert Pelzer dated September 6, 2002 with
      attachment.
38.   Anthony Rosenberg letter to Jeffrey Dow dated September 10, 2002.
39.   Jeffrey Dow letter to Kimberly Urdahl dated September 10, 2002.
40.   Jeffrey Dow letter to Sandoz Pharma, LTD dated September 21,
      2002.
41.   Kimberly Urdahl letter to Jeffrey Dow dated September 24, 2002.
42.   Vincent FitzPatrick, Jr. letter to Jeffrey Dow dated October 7, 2002.
43.   Alan Ades letter to Anthony Rosenberg dated October 8, 2002.


44.   Michelle Blinn Fax to Alan Ades, Jim Apostolakis, Benie Marden,
      Tony Schrafl, Ph.D. and Herbstein dated July 2, 2002 with attachment.
45.   Richard Shaw Fax to Alan Ades dated July 7, 2002 with attachment.
46.   Steven.B. Bernitz letter to Reto Brandli dated July 3, 2002.
47.   James J. Apostolakis Fax to Jeff Dow, Esq. dated July 15, 2002.
48.   Steven Bernitz Fax to Board of Directors, Mike Baronian, Herbstein
      dated July 18, 2002 with attached letter from Novartis dated July 17,
      2002
49.   Michelle Blinn Memo to Board of Directors, Mr. Herb Stein, Mr. Mike
      Baronian dated July 23, 2002 with attached Agenda
50.   Rich Shaw Fax to Alan Ades dated July 23, 2002 with attachment.
51.   Catherine Howe Fax to Mr. Ades dated August 8, 2002 with
      attachment.
52.   Organogenesis and Novartis Memo of Understanding dated August 11,
      2002.
53.   Michelle Blinn Fax to Mr. Ades, et al dated August 29, 2002 with
      attached letter of Jeffrey Dow to Reto Brandli dated August 28, 2002
54.   Kimberly J. Urdahl letter to Jeff Dow dated August 22, 2002 with
      attached Newco: Summary of Proposed Terms dated August 22,
      2002..
55.   Novartis Pharma AG, Robert Pelzer and Kimberly Urdahl letter to
      Board of Directors dated August 30, 2002 with attachments.
56.   Summary of Proposed Terms – Acquisition of Apligraf dated 8/30/02

57.  Jeffrey L. Dow letter to Robert Pelzer and Kimberly Urdahl dated September 6, 2002 with interim Supply Plan attached.
58.  Michelle Blinn E-mail dated September 6, 2002 with Options attached.
59.  Michelle Blinn Fax to Mr. Ades, et al dated September 9, 2002 with attached letter from J. Dow to R.Pelzer et al dated September 6, 2002.
60.  Kimberly Urdahl letter to Jeffrey L. Dow, Esq. dated September 10, 2002.
61.  Jeff Memo to Negotiating Committee dated September 12, 2002.
62.  Organogenesis Proposal dated September 17, 2002.
63.  Employees of Organogenesis Memo to Organogenesis Board of Directors dated September 18, 2002.
64.  Paul G. Thomas Fax to Steve Bernitz dated September 30, 2002 with attachment.

Note:   WARN Act Claimants intend to introduce some, but not all of the foregoing documents recently received in discovery from the Debtor.

## <u>REORGANIZED DEBTOR'S LIST OF EXHIBITS TO BE OFFERED AT TRIAL</u>

| <u>Ex. No.</u> | <u>Description</u> | <u>Date</u> | <u>Bates Number</u> |
|---|---|---|---|
| 1. | Organogenesis press release | July 11, 2002 | 00001-00002 |
| 2. | E-mail from Steven Bernitz to Jane Andrews *et al.* | August 2, 2002 | 00129 |
| 3. | Memo from Steven Bernitz to All Employees | September 9, 2002 | 00126-00127 |
| 4. | Memo from Steven Bernitz to All Employees | September 16, 2002 | 00128 |
| 5. | Memo from Organogenesis Board of Directors to Employees of Organogenesis | September 18, 2002 | 00352-00353 |
| 6. | Steven Bernitz letter to Anthony Rosenberg of Novartis | June 24, 2002 | 00228-00232 |
| 7. | Steven Bernitz letter to Reto Brandli of Novartis | July 2, 2002 | 00233-00235 |
| 8. | Novartis letter to Steven Bernitz | July 17, 2002 | 00004 |
| 9. | Novartis letter to Jeffrey Dow enclosing term sheets | August 22, 2002 | 00239-00254 |
| 10. | Jeffrey Dow letter to Reto Brandli | August 28, 2002 | 00255-00256 |
| 11. | Novartis letter to Board of Directors, Organogenesis Inc. | August 30, 2002 | 00021-00044 |
| 12. | Jeffrey Dow letter to Novartis enclosing interim supply plan | September 6, 2002 | 00045-00049 |
| 13. | Novartis letter to Jeffrey Dow | September 10, 2002 | 00050-00051 |
| 14. | Jeffrey Dow letters to Novartis | September 10 and 12, 2002 | 00052-00054 |
| 15. | Jeffrey Dow letter to Sandoz Pharma | September 21, 2002 | 00289 |
| 16. | Novartis letter to Jeffrey Dow | September 24, 2002 | 00290 |
| 17. | Alan Ades letter to Novartis | October 8, 2002 | 00293-00294 |

| Ex. No. | Description | Date | Bates Number |
|---------|-------------|------|--------------|
| 18. | ICN Pharmaceuticals letter to Michael Sabolinski | February 28, 2002 | 00133 |
| 19. | E-mail from Karl Kirwan of Broadmark to Laurie | April 5, 2002 | 00178-00179 |
| 20. | ICN Pharmaceuticals fax to Organogenesis Inc. enclosing confidentiality agreement | April 25, 2002 | 00134-00137 |
| 21. | E-mail from Steven Bernitz to Gary Gillheeney *et al.* | May 17, 2002 | 000131-000132 |
| 22. | Amy Mumma memo to Steve re: Jim Flynn and Deerfield Management | (undated) | 000138 |
| 23. | Letter from Eric Gier of Broadmark to Gary Gillheeney | June 18, 2002 | 00173-00177 |
| 24. | Broadmark Financing Proposal Prepared for Gary Gillheeney | June 18, 2002 | 00165-00172 |
| 25. | Mark LaMagna e-mail to Gary | June 18, 2002 | 000139 |
| 26. | Union Square Capital Financial Restructuring Analysis of Organogenesis | (undated) | 00140-00158 |
| 27. | E-mail from Richard Shaw to Steven Bernitz and Gary Gillheeney | July 26, 2002 | 000130 |
| 28. | Memo from Laurie re: Ken Nover of AG Edwards | (undated) | 00227 |
| 29. | Preliminary Credit Facility Terms and Conditions | August 30, 2002 | 00395-00403 |
| 30. | Preliminary Summary of Proposed Terms for Acquisition of the Apligraf Assets of Organogenesis | August 30, 2002 | 00404-00415 |
| 31. | E-mail from Michelle Blinn enclosing document for Board of Directors meeting | September 6, 2002 | 00366-00368 |
| 32. | Letter from Lifecell to Steven Bernitz | October 1, 2002 | 00346-00351 |

☑07

## LIST OF WARN ACT CLAIMANTS' WITNESSES

1.  Jane Andrews, 90 Rosewood Drive, Taunton, MA 02780

2.  Tamyra A. Toole, 17 East Milton Road – Apt. 1, Brookline, MA 02146

3.  Dan O'Reilly, 3 Jason Drive, Carver, MA 02330

4.  Leon M. Wilkins, 175 Forest St., North Andover, MA 01845

5.  Marc Pelletier, 2 Michael Road, North Attleboro, MA 02763

6.  Andrea D. Sinclair, 24 Stony Brook Road, Sherborne, MA 01770

7.  Steven Bernitz, Coley Pharma, 93 Worcester St., Suite 101, Wellesley, MA 02481

8.  Jeffrey Dow, 816 Willard St., Quincy, MA 02169

9.  Gary Gillheeney, Organogenesis, Inc., 150 Dan Road, Canton, MA 02021

10. Richard Shaw, Organogenesis, Inc., 150 Dan Road, Canton, MA 02021

Witnesses 1, 2, 3, 4 and 5 will testify concerning the termination of their employment without notice and the conduct of the Debtor during 2002.

Witnesses 6 and 10 will testify concerning conversations and decisions regarding the WARN Act during 2002.

Witnesses 7, 8 and 9 will testify concerning negotiations between the Debtor and Novartis Pharma AG and with other entities, as well as conversations regarding the WARN Act and the decision to declare bankruptcy during 2002.

## REORGANIZED DEBTOR'S LIST OF WITNESSES

The Reorganized Debtor plans to call some or all of the following witnesses to testify at trial:

1.    Alan Ades, Organogenesis Inc.

2.    Gary Gillheeney, Organogenesis Inc.

3.    Michelle Blinn, Organogenesis Inc.

4.    Richard Shaw, Organogenesis Inc.

Witnesses 1 and 2 will testify about the Debtor's defenses to the WARN Act, including the facts and circumstances surrounding the Debtor's efforts to obtain capital or business which would have enabled the company to postpone the termination of the WARN Act claimants, and the unforeseeable business circumstances that led to the termination of the WARN Act claimants.

Witness 3 is a keeper of records and will testify regarding the authenticity of documents supporting the Debtor's defenses.

Witness 4 will testify, if necessary, about the number of employees terminated during the relevant time period and the calculation of any amounts owed to the WARN Act claimants should they prevail in their claims.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
ORGANOGENESIS INC.,                                 )
                                                    )
              Appellant,                            )
      v.                                            )    Case No. 04-CV-12549-RWZ
                                                    )
JANE ANDREWS, KAREN A. GIAMPAOLO,                   )
MARGARET HIRST, DINA KAZIS-PANICO,                  )
HODA MANSOUR, JOHN G. O'BRIEN,                      )
DANIEL O'REILLY, MARC P. PELLETIER,                 )
JOHN C. RODRIGUES, JONATHAN E.                      )
THAYER, TAMYRA A. TOOLE, and                        )
LEON M. WILKINS,                                    )
                                                    )
              Appellees.                            )
_____             )
                                                    )
In re:                                              )
                                                    )    Chapter 11
ORGANOGENESIS INC.,                                 )    Case No. 02-16944-WCH
                                                    )
              Debtor.                               )
_____             )

## CERTIFICATE OF SERVICE

      I, Joshua A. McGuire, hereby certify that, on this the 21st day of January, 2005, I caused true and accurate copies of the following:

      1.  Reply Brief Of Appellant Organogenesis Inc.; and

      2.  this Certificate Of Service

to be delivered to:

Kevin B. Callanan, Esq.
17 Accord Park Drive, Suite 101
Norwell, MA  02061

by facsimile and by first-class mail, postage prepaid.

Respectfully submitted,

/s/  Joshua A. McGuire
Joshua A. McGuire (BBO #651877)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Tel.:  (617) 832-1000
Fax:  (617) 832-7000
bctnotices@foleyhoag.com

Dated: January 21, 2005